STATE of Tennessee on the Relation of Stephen I. COHEN, Senator and Michael L. Kernell, State Representative, Complainants,

v.

Riley C. DARNELL, Secretary of State for the State of Tennessee, and Charles W. Burson, Attorney General and Reporter for the State of Tennessee, Respondents.

Supreme Court of Tennessee.

Sept. 29, 1994.

J. William Pope, Jr., Pikeville, for complainants.

Charles W. Burson, Atty. Gen. & Reporter, Michael E. Moore, Sol. Gen., Andy D. Bennett, Associate Chief Deputy Atty. Gen., Nashville, for respondents.

### · *ORDER*

Two motions have been filed by the complainants State Senator Stephen I. Cohen and State Representative Michael L. Kernell. On September 12, 1994, the complainants filed a motion for this Court to assume jurisdiction over this case pursuant to T.C.A. § 16–3–201(d). On September 22, 1994, the complainants filed a motion requesting this Court to grant an interlocutory order directing the Secretary of State to place upon the ballot for the November 8, 1994 election the question of whether Article 11, Section 5 of the Tennessee Constitution (pertaining to the prohibition of lotteries) should be deleted. The issue presented by these motions concerns interpretation of Article 11, Section 3 of the Tennessee Constitution pertaining to the legislative method of amending the constitution. The complainants' position is that the General Assembly has complied with the provisions of Article 11, Section 3, and, accordingly, a proposed amendment to repeal Article 11, Section 5 should be placed upon the ballot for the November 8, 1994 election. The respondents, Riley Darnell, Secretary of State and Charles Burson, Attorney General, take the position that the requirements of Article 11, Section 3 have not been met.

House and Senate journals reflect that in 1991, House Joint Resolution 14 of the 97th General Assembly, which sought to place on the ballot the question of the removal of the lottery ban in the Tennessee Constitution, was read three times and received a majority vote in the House of Representatives and the State Senate.

House Joint Resolution 73, pertaining to the same issue, was read on three occasions before the House of Representatives during the 98th General Assembly and received a two-thirds vote before that body. (The resolution received 74 ayes in the House). The Senate journal for the 98th General Assembly reveals that House Joint Resolution 73 failed in the Senate because it received 14 ayes and 18 nays. It was thereafter referred to the Committee on Calendar and Rules. The resolution, therefore, received a total of 88 votes in favor of it (74 plus 14).

On June 7, 1994, the complainants requested that Secretary of State Riley Darnell submit the proposed amendment on the November 8, 1994 ballot in order that the qualified voters could vote on whether the proposed amendment to delete the lottery ban should be ratified. The Secretary of State declined to place the question on the ballot.

On July 21, 1994, the complainants filed a "complaint for mandamus" requesting the chancery court to issue an alternative writ of mandamus requiring the Secretary of State to place the proposed amendment on the ballot. They later requested as an alternative grounds of relief that the court issue a declaratory judgment. On September 6, 1994 the chancery court granted the respondents' motion to dismiss. The chancery court ruled that the language in Article 11, Section 3 "means that two-thirds of the entire membership of the house and two-thirds of the entire membership of the Senate must agree to the proposed amendment."

### I.

■ The first motion filed by the complainants is a motion requesting that the Court take jurisdiction over this case pursuant to the reach-down provisions of T.C.A. § 16-3-201(d). The complainants assert that "the issue involved in this case is of unusual public importance in which there is a special need for an expedited decision and which involves issues of constitutional law." T.C.A. § 16-3-201(d)(1) provides that "[t]he supreme court may, upon the motion of any party, assume jurisdiction over an undecided case in which a notice of appeal is filed before any intermediate state appellate court after June 22, 1992." Subdivision (d)(2) provides that "[t]he provisions of subdivision (d)(1) apply only to cases of unusual public importance in which there is a special need for expedited decision and which involve: (A) State taxes; (B) The right to hold or retain public office; or (C) Issues of constitutional law."

In this case it appears that all parties agree that the issue presented is "of unusual public importance," and, certainly, the complainants have shown that there is "a special need for expedited decision." Furthermore, the matter squarely raises an issue of state constitutional law. Accordingly, the Court grants the motion for this Court to assume jurisdiction.

### II.

The first paragraph of Article 11, Section 3 provides the following with respect to amending the constitution:

Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals with the yeas and nays thereon, and referred to the general assembly then next to be chosen, and shall be published six months previous to the time of making such choice, and if in the general assembly then next chosen as aforesaid, *such proposed amendment or amendments shall be agreed to by two-thirds of all the members elected to each house,* then it shall be the duty of the general assembly to submit such proposed amendment or amendments to the people at the next general election in which a Governor is to be chosen. And if the people shall approve and ratify such amendment or amendments by a majority

of all the citizens of the State voting for Governor, voting in their favor, such amendment or amendments shall become a part of this Constitution. When any amendment or amendments to the Constitution shall be proposed in pursuance of the foregoing provisions the same shall at each of said sessions be read three times on three several days in each house. (italics emphasis added).

The provisions of this paragraph of Article 11, Section 3 were not present in the 1796 Constitution, but were adopted when the Constitutional Convention of 1834 met. The pertinent language regarding "two-thirds of all the members elected to each house," remains essentially as enacted in 1835. The journal of the Constitutional Convention of 1834 does not reveal the intent of the delegates beyond the text of the provision.

We find that the text of the provision compels the interpretation that the two-thirds vote requirement applies to each house acting independently. "When construing a constitutional provision we must give 'to its terms their ordinary and inherent meaning' *State v. Phillips,* 159 Tenn. 546, 21 S.W.2d 4 (1929)." *Gaskin v. Collins,* 661 S.W.2d 865, 867 (Tenn.1983).

The trial court correctly noted the separate responsibilities of the legislative and judicial branches of government:

> "[i]t is important to keep in mind the appropriate role of the courts. Courts don't decide whether we should or should not have a lottery in Tennessee, and the courts don't decide whether the question of whether we should have a lottery should be submitted to the people for a vote in a referendum. The Court's role is very limited, that is to deciding the legal issue in the case. . . ."

We, therefore, hold that the language of the constitution requires that the Senate and the House of Representatives separately approve the amendment by a two-thirds vote. The phrase "each house" as used in Article 11, Section 3, refers to the bodies acting independently. Since the proposed amendment did not pass by a two-thirds vote of the Senate, the relief sought by complainants is denied, and the decision of the trial court is affirmed.

O'BRIEN, C.J., and DROWOTA, ANDERSON, REID and BIRCH, JJ., concur.